IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTIN L. KRAUT,

                Plaintiff,

v.                                                                                          OPINION and ORDER

CHRIS SCHILDGEN and RICHLAND CNTY.                              25-cv-378-jdp
SHERIFF's DEP'T,

                Defendants.

---

Plaintiff Justin L. Kraut, proceeding without counsel, alleges that defendant Sergeant Chris Schildgen illegally stopped and searched his vehicle after Kraut's neighbor complained that Kraut had created a disturbance by firing guns in a residential neighborhood. Kraut paid the full filing fee, but I have the authority to "screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). I will dismiss the complaint without leave to amend for failure to state a claim for which I could grant relief.

ALLEGATIONS OF FACT

About a week before Schildgen stopped Kraut's vehicle, on October 18, 2023, Kraut had been charged with operating a firearm while intoxicated in violation of Wis. Stat. § 941.20(1)(b). *See* docket sheet in Richland County case no. 2023CM157. That day, Kraut's bond conditions were modified to include a condition that Kraut not possess firearms.

On October 24, 2023, defendant Schildgen initiated a stop of Kraut's vehicle in Richland Center, Wisconsin. Kraut's wife was in the vehicle with him, and she co-owned the

vehicle with Kraut. At some point, Kraut was "mechanically restrained" and placed in the back of a police vehicle. Dkt. 1 at 5.

Schildgen told Kraut that he pulled Kraut over because Kraut's neighbor had complained about hearing gunshots coming from the end of Honey House Lane in Richland Center. Kraut alleges that many of his neighbors "at the end of the lane shoot firearms on private land legally when they target practice or when they hunt." Dkt. 1 at 5. Kraut similarly alleges that, during that time of year, his neighbors "are sighting in firearms more tha[n] usual." *Id.* The neighbor who complained is a "known nuisance caller who has been reporting lawful [S]econd [A]mendment activity" to defendant Richland County Sheriff's Department (RCSD) for years, and who has been told that it's legal for people to shoot in the area. *Id.* The neighbor did not see Kraut shoot a firearm, but she heard gunshots and saw Kraut in his vehicle shortly thereafter.

Nondefendant Deputy Steven Herbers responded to the scene of the traffic stop. Herber told Schildgen that Kraut's wife owned the vehicle and that she had given Herber consent to search the vehicle, after which Schildgen started searching the vehicle. Kraut yelled that he didn't consent to the search and Herbers told Schildgen, but Schildgen continued the search. Schildgen repeatedly unzipped a backpack, and he seized "one live 12-gauge shotgun shell." Dkt. 1 at 7. (Kraut does not allege whether Schildgen recovered the round from the backpack.)

While Kraut was restrained in the back of the police vehicle, Kraut saw an orange shotgun "in the back hatch" that was "unsecured and pointed directly at [him]." *Id.* at 6. Schildgen ignored Kraut's requests for Schildgen to secure the weapon.

2

After Schildgen stopped his vehicle, Kraut was arrested and charged with six counts of misdemeanor bail jumping in violation of Wis. Stat. § 946.49(1)(a). *See* docket sheet Richland County case no. 2023CM163. The parties later reached a joint resolution by which the charges were amended and Kraut pleaded guilty to six violations of disorderly conduct under Richland County Ordinance no. 79-4. *Id.* Kraut resided at 27135 Honey House Lane, Richland Center, Wisconsin when Schildgen stopped his vehicle. *See id.*

ANALYSIS

Kraut brings Fourth Amendment claims based on the traffic stop and the search of his vehicle. Kraut also brings an Eighth Amendment claim based on the allegation that Schildgen's stored weapon was pointed at Kraut, which Kraut says was "torture." Dkt. 1 at 6. Kraut was not a convicted prisoner when that incident occurred, so I will treat the Eighth Amendment claim as a Fourteenth Amendment substantive due process claim. *See Chavez v. Martinez*, 538 U.S. 760, 773 (2003) (plurality opinion).

There is a preliminary problem: Kraut's Fourth Amendment claim based on the stop of his vehicle is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). And even if *Heck* didn't apply, Kraut hasn't stated a facially plausible Fourth or Fourteenth Amendment claim.

A. *Heck*

Kraut's Fourth Amendment claim based on the stop of his vehicle is *Heck*-barred. *Heck* held that if a plaintiff "seeks damages in a [42 U.S.C.] § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.

3

Kraut pleaded guilty to six violations of disorderly conduct under Richland County Ordinance no. 79-4. Under that ordinance, it is unlawful for any person "in a public or private place to engage in . . . boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance." Kraut alleges that his neighbor, who had previously made similar complaints, reported him for firing guns, and Kraut was initially charged with bail jumping for violating a bond condition that precluded him from possessing firearms. Kraut disputes that he fired guns the day that Schildgen stopped him, contending that other neighbors committed that conduct. But if Kraut established this fact, it would necessarily imply the invalidity of the disorderly conduct violations. Kraut would not have engaged in any unreasonably loud conduct to provoke his neighbor to report him to the police. I will not allow Kraut to proceed on his Fourth Amendment claim based on the illegal stop because it is barred by *Heck*.

B. **Fourth Amendment claims**

    1. **Vehicle stop**

Kraut has also failed to state a facially plausible Fourth Amendment claim based on the stop of his vehicle. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "[P]olice may conduct a brief, investigatory traffic stop if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006); *see also United States v. Adebayo*, 985 F.2d 1333, 1338 (7th Cir. 1993). "When determining whether an officer had reasonable suspicion, courts examine

4

the totality of the circumstances known to the officer at the time of the stop . . . ." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). Wisconsin law defines misdemeanor bail jumping to include intentionally failing to comply with a bond's terms when an individual is charged with a misdemeanor. Wis. Stat. § 946.49(1)(a).

It's clear from Kraut's allegations and state judicial records that Schildgen had at least a reasonable suspicion that Kraut had committed bail jumping when he stopped Kraut. Kraut alleges that gunshots were coming from the end of Honey House Lane, where Kraut lived at the time. Although the neighbor who complained did not see Kraut shoot a firearm, she saw him in his vehicle close to the area that the shots came from shortly after they were fired. Also, Kraut had recently been charged with operating a firearm while intoxicated. *See United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995) ("[R]ecent relevant criminal conduct . . . is a permissible component of the articulable suspicion required for [an investigatory] stop."). Based on the totality of the circumstances, Schildgen had at least a reasonable suspicion that Kraut had committed bail jumping when he stopped him.

Kraut alleges that it was legal to shoot guns where he lived in Richland Center, but this allegation is legally unsupported. *See* Richland County Ordinance no. 270.01. Also, Kraut's vague allegation that the neighbor who reported him to the police was a nuisance caller doesn't plausibly suggest that Schildgen had a good reason to doubt the reliability of her complaint. Even if the Fourth Amendment claim based on the stop were not barred by *Heck*, I would not allow Kraut to proceed on it.

2. **Illegal search and seizure**

I take Kraut to allege that Schildgen illegally searched the vehicle and the backpack, and illegally seized the shotgun round. I begin with the search of the vehicle.

5

As a general rule, an officer's reasonable belief that the person consenting to the search of a vehicle had authority to consent "is all that is necessary for a consent search to be valid." *See United States v. Jensen*, 169 F.3d 1044, 1049 (7th Cir. 1999). Relationships that give rise to a presumption of control of property include "husband-wife relationships." *United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999).

Kraut alleges that his wife co-owned the vehicle that Schildgen stopped and gave the officers consent to search the vehicle. Those facts show that Schildgen's search was valid, at least at its inception. Kraut alleges that Schildgen knew that Kraut co-owned the vehicle, but that's immaterial because his wife, another co-owner, allowed the officers to search it.

Kraut suggests that his illegal search claim is governed by *Georgia v. Randolph*, 547 U.S. 103 (2006). *Randolph* held that "a physically present inhabitant's express refusal of consent to a police search [of his residence] is dispositive as to him, regardless of the consent of a fellow occupant." *See id.* at 122–23. But I have found no controlling authority extending *Randolph* to the search of a vehicle. And there are good reasons to doubt the propriety of that extension in view of the differential treatment of residences and automobiles under the Fourth Amendment. *See, e.g.*, *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973) ("Although vehicles are effects within the meaning of the Fourth Amendment, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."); *see also United States v. Lumpkins*, 687 F.3d 1011, 1014 (8th Cir. 2012) ("It is not clear that *Randolph*, which involved a search of a residence, applies in the context of a vehicle search."); *Sevilla-Carcamo v. State*, 335 Ga. App. 788, 795 (2016) (declining to apply *Randolph* to vehicle search); *State v. Copeland*, 399 S.W.3d 159, 167 (Tex. Crim. App. 2013) (same). *Randolph* does not apply. I will not allow Kraut to proceed on his Fourth Amendment claim based on the search of the vehicle.

I turn to Kraut's Fourth Amendment claim based on the opening of the backpack and seizure of the shotgun round. "A consensual search is manifestly reasonable so long as it remains within the scope of the consent." *United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994). The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., "what would the typical reasonable person have understood by the exchange between the officer and the suspect[.]" *Id.* at 231. If the party who gives consent stands by and fails to object to the search, that failure "may be considered an indication that the search was within the scope of the consent." *See id.*

Kraut does not specifically allege whether his wife consented to the search of the backpack. But Schildgen was investigating Kraut based on a complaint that he was firing guns, and it's reasonable to think that a backpack would contain evidence that Kraut committed that conduct (e.g., a handgun or ammunition). Kraut does not allege that his wife objected to the search of the backpack. In the circumstances, Kraut hasn't plausibly alleged that Schildgen exceeded the scope of his consent by opening the backpack. I will not allow Kraut to proceed on a Fourth Amendment claim based on this allegation.

That leaves Kraut's Fourth Amendment claim based on the seizure of the round of ammunition. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Horton v. California*, 496 U.S. 128, 134 (1990). "[A]n officer only needs probable cause to believe that the item is linked to criminal activity in order for the plain view exception to the warrant requirement to apply." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997). Officers may have probable cause to seize an ordinarily innocuous object when the context of an investigation casts that item in a suspicious light, such

7

as guns and ammunition found during an investigation of illegal hunting. *United States v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004).

Kraut does not specifically allege whether Schildgen found the round in the backpack, or whether the round was in plain view in the vehicle. Either way, his claim is not viable. Schildgen had at least implied consent to open the backpack to search for evidence of bail jumping, and the round would have been in his plain view at that point. *See Horton*, 496 U.S. at 136 ("It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."). Also, in the circumstances, Schildgen had reason think that the round was evidence that Kraut had committed bail jumping. I will not allow Kraut to proceed on a Fourth Amendment claim based on Schildgen's search of the backpack or seizure of the round of ammunition.

**C. Fourteenth Amendment claim**

Kraut brings a Fourteenth Amendment substantive due process claim based on the allegation that Schildgen's stored weapon was pointed at him. The scope of substantive due process is "very limited," and "such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024). "That high standard requires allegations of conduct under color of state law that violated a fundamental right or liberty and was so arbitrary and irrational as to shock the conscience." *Id.*

The list of fundamental rights recognized by the Supreme Court is short. *Id.* at 590. In addition to the freedoms expressly protected by the Bill of Rights, the Due Process Clause "protects such non-enumerated rights as the right to marry, to have children, to direct the

8

education and upbringing of one's children, to marital privacy, to use contraception, and to bodily integrity." *Id.* (alterations adopted).

Kraut hasn't expressly alleged that Schildgen violated a fundamental right or liberty, and I cannot plausibly infer that Schildgen committed that conduct based on the vague allegation that his stored gun was pointed at Kraut. Likewise, Kraut's subjective belief that the weapon, which was kept in a separate area of the police vehicle, was loaded and pointed at Kraut doesn't plausibly suggest that Schildgen's conduct was so arbitrary and irrational as to shock the conscience. Kraut has not alleged any facts plausibly suggesting that Schildgen intended to torture him by leaving his gun "unsecured" in a separate area of the vehicle. I will not allow Kraut to proceed on his Fourteenth Amendment substantive due process claim.

## D. Claims against the RCSD

Kraut asserts the claims that he brought against Schildgen against the RCSD as well. But Kraut's claims against the RCSD are not viable for three reasons. First, the RCSD "is not a legal entity separable from the county government which it serves." *See Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). Second, even had Kraut sued Richland County itself, "a municipality cannot be liable [for damages] when there is no underlying constitutional violation by a municipal employee." *See Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021). Again, Kraut hasn't stated a facially plausible claim against Schildgen. Third, Kraut hasn't alleged that a county policy or custom caused any of the constitutional violations that he asserts. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91, 694 (1978). I will not allow Kraut to proceed against the RCSD.

CONCLUSION

When a plaintiff proceeds without counsel, the court of appeals has cautioned against dismissing his case without giving him a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). But "if it is clear that any amendment would be futile," I need not grant leave to amend. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). *Heck* bars at least Kraut's Fourth Amendment claim based on the stop of his vehicle, and it's clear from the complaint and state judicial records that further amendment of his other Fourth Amendment claims would be futile. Also, Kraut's implausible allegations that Schildgen intended to torture him don't meet the high standard for a Fourteenth Amendment substantive due process claim. I will dismiss the complaint without leave to amend.

ORDER

IT IS ORDERED that:

1. Plaintiff Justin L. Kraut's complaint, Dkt. 1, is DISMISSED without leave to amend for failure to state a claim upon which I could grant relief.

2. The clerk is directed to enter judgment and close the case.

Entered October 28, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge